Case number 226023, Joshua Jarrett et al. versus the United States of America. Oral argument not to exceed 15 minutes per side. Mr. Norris, you may proceed for the appellants. Mr. Norris, before you begin, if you would just make sure to include how much time you'd like to reserve for rebuttal. Yes, Your Honor. Good morning. Cam Norris for the taxpayers. I'd like to reserve three minutes for rebuttal. May it please the court. The rule in tax cases is pay first, litigate later. It is not pay first, litigate only if DOJ wants you to. The government cannot unilaterally moot refund suits for two main reasons. First, taxpayers can reject its offers of full payment. Campbell Ewald lets taxpayers proceed to judgment unless a statute requires them to accept. But no such federal statute exists. Second, taxpayers can get an injunction. Narrow injunctive relief is available in refund suits according to persuasive dicta from the Supreme Court, an opinion from then-Judge Kavanaugh, and the IRS itself. The district court's contrary ruling puts the IRS between courts and taxpayers instead of putting courts between the IRS and taxpayers. This court should reject it. Counsel, can I ask you a question? I understand the objective here to get a ruling from the federal courts on this, and I can understand why the client would want that, but I guess I'm trying to understand what the risk is. If the case is moot, you're still going to get a published decision explaining the IRS's position, its concession, but they're not going to continue to litigate this with Mr. Jarrett. It will be quite clear what their position on this case when it comes to taxability is. I guess I'm struggling with what the problem is for you all. This is not a class action, so that set of issues is not there. What are you nervous about? Well, Your Honor, a few things. First is the risk of 7405 liability. When you take the government's money, but you don't have a judgment of a court saying you're entitled to it, the government can turn around and sue you for an erroneous refund. They've said they won't do that, and it strikes me as putting them in jeopardy to welch on that statement. So I'm going to put that in their pleadings. We'll ask them that today at argument. So that doesn't seem like a meaningful risk. Well, Your Honor, the other aspect of this is, of course, we did not get a decision saying that the IRS apparently agrees with Mr. Jarrett's position that it does not treat these created tokens as income. We didn't get anything like that. We got a without prejudice dismissal. If we were to proceed to judgment, we would get potentially an issue preclusive judgment from a court. Jarrett has this tax problem every year. Every year he creates these tokens. He needs a judge, a court, to resolve the issue. So what happened in tax years 2020 and 2021 as it relates to these tokens? So all that's in the record from the amended complaint is that he did create these tokens again in both 2020 and 2021. He would have positive, he owes taxes under the government's theory, and he would not owe those taxes under our theory. That's what's in the amended complaint. Right, but what's actually happened, whether the same situation has occurred where he's paid it and the government has, IRS has refunded that money, what's actually taken place? I don't think that's in the record. My memory is he has not, for example, filed another refund suit based on those years. I don't know what else has happened with respect to those tax years. Well, wait a second. You must know what's happened. You're saying it's not clear whether he paid tax or didn't pay tax in 2020 and 2021? I'm saying, Your Honor, it's not on the record. I realize that. Tell us what's the status. There's no drama there. Tell us what it is. He either is paying it or he's not paying it. What's going on? Your Honor, I need to check on this, but I'll give you what I think the answer is, which is I think that he did not pay the tax for 2020 and 2021. And they have not gone after him? No, Your Honor, not yet. The IRS has quite the backlog, but so far, no, they have not. Doesn't that say, though, that the concern that your client has, that even though the government has made this affirmative statement, that it's not going to go after him for this 2019 year again, that that is highly unlikely? I mean, there doesn't seem to be any evidence in the record to suggest that that statement is untrue. Well, Your Honor, there's tons of cases. We cite the Schlissel case from this court that say when you get into litigation and the defendant promises they're not going to do something in order to move the case, courts don't take those statements as depriving them of jurisdiction because they're non-binding. They don't bind whoever comes next in the IRS. But setting aside 7405, Mr. Jarrett has this problem every single year. And the government outside of this litigation is saying that his tax position is wrong. They have guidance, they have forms that says you have to report these created tokens as income. And in this litigation, they filed an answer that said over 10 times that Jarrett's position is wrong and that these are taxable income upon creation, not upon the sale. So he knows the government disagrees with him. He has this problem every year. He needs a court to say who's right because he has an intractable conflict with the IRS. He needs a judgment that would be issue-preclusive between him and the government. And he's also asked for an injunction, an injunction that would stop the government from doing this to him in future years, which we think is... What happens in reverse? Let's say it's the opposite. The taxpayer's just really tired of dealing with the IRS. It's time-consuming. It's expensive. They just throw up their hands and say, okay, here's the money. And again, I wouldn't call that an offer. I mean, I'd call that a tender. So they're tendering the money, cash, a check, whatever it is. Wouldn't that move the case? I mean, in the other direction, I mean, this seems to me potentially quite helpful to taxpayers. I think there are plenty of taxpayers that would say I'd like to just end this. How can I end it, counsel? By paying them out plus interest. I imagine the practical answer is the government is happy to take the money in most scenarios. But as a formal answer, the Justice Manual, DOJ's manual about how it litigates tax cases, it's section 6-6.613. And it says when taxpayers do that, the government has a decision to make. It has the discretion to reject the offer. And the offer does not matter until it's accepted. So we actually think the government doesn't follow its own reading of Campbell-Ewald in the reverse scenario. And let alone when it... Well, it doesn't matter what they've said in their brief. In this litigation, haven't they said the opposite? That it does work in the other direction? Am I supposed to remember in the brief? No, Your Honor. They cite a case, I think it's from an Indiana district court case, where what happened was the taxpayer paid the money to the government and the government accepted it. And of course, the court said, well, the government took the money and this case is over. That's not inconsistent with our position. Our position is we have the right to say no. And the government reserves in the Justice Manual the right to say no in its cases in reverse. So we think that the position is totally parallel. And this all comes from Campbell-Ewald, which postdates almost every case that the government has cited in this case. Campbell-Ewald explains how it applies to tax cases. And it says in tax cases, acceptance is still required. Now there's a caveat in the opinion that says the government can sort of change the rules by passing a statute that forces taxpayers or in reverse, forces the government to accept an offer and end the case. But the government hasn't identified any federal statute that exists that does that. I don't remember, forgive me for not remembering this passage in Campbell-Ewald, I don't remember a passage saying here's how Campbell-Ewald works in taxpayer cases. I don't remember that. Where does it say that? You're talking from the majority, right? The Ginsburg opinion? Correct. Justice Ginsburg has an opinion about some 19th century railroad tax cases. And she explains why those are consistent with the rule in Campbell-Ewald. So reading between the lines a little bit, Chief Judge Sutton, but she's not saying tax cases are different. She's saying the rule is the same and distinguishing those opinions, which are the same opinions the Chief Justice stressed. Why does the majority then caveat the tender situation? Why do they say we're not going to decide what happens when you just say here it is, here's the property back, here's the money and so forth? I thought they were quite explicit in saying we're not dealing with that. They were quite explicit in saying we don't deal with the scenario where the money is tendered and the court enters a judgment in favor of the plaintiff. That judgment part of the hypothetical reserved in Campbell-Ewald is not met here. If the government thought we were right, as you mentioned at the outset, I'm not sure why they're disagreeing to get a judgment in our favor. I'm not sure why they're disagreeing to get a 2405 liability. It would provide us a jumping off point to talk about our right to injunctive relief for future years. It would resolve this in a matter on the merits for Mr. Jarrett, which is different from this without prejudice dismissal. As it relates to your request for injunctive relief, didn't you all request an injunction after they paid the money? Am I wrong about that? You're not wrong about that. The original complaint also requested an injunction or preserved our right to do so. And the government raised this argument in the district court, but the district court granted our motion to amend the complaint. And so we think as operation of law, the amended complaint is as if we filed it on the original day of the original complaint. Why doesn't the Anti-Injunction Act bar the request for an injunction in this case? It doesn't, Your Honor. The IRS agrees with us that it doesn't. I found this after the briefing, so I apologize. I found this after the briefing, but the IRS, under Section 1.5.2.1, says that taxpayers can get injunctive relief in refund suits. That has long been the IRS's position for over two decades. And we think we can get one for the reasons that are given in the footnote 22 in Bob Jones and for the reasons that then-Judge Kavanaugh gave in his dissent in Cohen, which are... Irrespective of what, I'm sorry to interrupt you, but irrespective of what's in the manual, there's a tax liability, doesn't it? Respectfully, Your Honor, no. Bob Jones explains why not. So the Anti-Injunction Act bars a suit that has the purpose of restraining assessment or collection. Now, everybody agrees that refund suits, traditional refund suits, don't have that purpose. So the question is... So isn't that the purpose that you're seeking, though? I mean, maybe traditionally they don't, but what you're insisting is is that you're entitled to injunctive relief, and that seems to be the purpose of the suit because they've tendered over the money that you said that your client paid in error, and so now the only thing that you're pressing for is the injunction. Right, Your Honor. So the question is whether tacking on what the Supreme Court has called an ancillary injunction changes the purpose of a refund suit, and we would argue that it doesn't because all an ancillary injunction does is it asks for the same tax to not be applied to this particular taxpayer again in future years. It's not inconsistent with the Anti-Injunction Act because all it does is replicate what a taxpayer could do by bringing a series of refund suits over and over year after year. It's not necessarily inconsistent as what the Court has said. It's always left the question open, and Judge Kavanaugh says the question really ought to be closed because what the Supreme Court said in Regan is once the refund suit drops out, once the traditional refund claim drops out, that ought to activate your right to an injunction, that ought to activate your right to a judicial review of their claim. And so if all other opportunities have been eliminated, the Anti-Injunction Act can't be the thing that stands in the way of getting judicial review. So in tax cases, you can never move it by paying? I don't think so, Chief Judge Sutton. So the IRS can kill the case in its infancy by giving us an administrative refund. There's an exhaustion process we have to go to. There's a six-month waiting period. Congress created that at the outset. And I also think this case would have been very easy to defeat if the government had just given us a better offer. If the government had said we will give you a judgment, we will agree to a judgment for 2019, and an injunction limited to Mr. Jarrett going forward, we would have taken that deal. And I think in most cases, the taxpayers would take the deal. So the question is what happens when... The one thing about your position that I'm not sure is good for taxpayers is it's quite possible that they want to take a position one way or another, but they also don't want to litigate just yet either. So in other words, they just don't know whatever. Maybe they want to take two years to sort out what the right answer is. Or maybe they want to take two years to see how cryptocurrencies evolve. So they just decide we're not going to litigate it. We're going to let these people not have to be taxable at this point either by paying refunds or the opposite position. That's the whole point. They don't want to decide just yet. And your position here does not give them that liberty. That just shows me it's not very productive. We disagree, Chief Judge Sutton. They have the opportunity to kill these cases in the administrative process, as I mentioned. And I'm not sure why the government, if they don't want to litigate these cases, why they don't just agree to a judgment in our favor. It's a district court judgment. It's 1921. It sounds like there's no liability for those years. In 19, they just hadn't figured out their position. And I guess you're probably right. They're not committing a stance here as proved by the fact they won't enter into an injunction of some sort or a judgment. But I say so be it. Governments sometimes work better when they take a little time to work through what they want to do. And I do think this litigation creates quite a bit of inertia against them. They're right. It's not preclusive, but it definitely creates inertia against them because now they're taking opposite positions. And courts don't like that when they pay some people back and not others. So this is just a function. It's not so much that I trust the government. It's that it's sometimes very hard to sort out what the right answer is and what the wrong answer is. That's no doubt true, Judge Sutton. But what is happening in this case is the government has taken a position. Its forms and its guidance, and its answer in this case, which we all cite... You know the way this works. They probably start with the assumption everything's taxable. If I was running the IRS, I'd probably start that way too. But now they're thinking about it. And the fact that they don't want to litigate this one I mean the point is it sometimes takes a little time to sort out what the right answer is. Point taken, Your Honor. I would just push back one more time factually. They have official guidance on cryptocurrency that says we're wrong. That is the official position of the government. And you've got to think about Mr. Jarrett as well. If you could wind it up, we're about three minutes over. Okay, just one quick point. Mr. Jarrett faces this problem every year. He knows the government is saying that he's wrong. He needs a judge to decide whether he's right or wrong. Thank you. All right, we'll hear from government counsel. May it please the court. My name is Ivan Dale on behalf of the United States appellee in this case. Mr. Jarrett's won an advisory opinion that the income that the cryptocurrency that they earned through staking is not income when it is received. And they won an injunction in future years preventing the IRS from treating it as income hence preventing the IRS from taxing it. The former relief is foreclosed by this court in the Supreme Court's cases on mootness and Article III case and controversy. The latter is foreclosed by the Anti-Injunction Act. Before I dig into the details too much, I do want to correct a couple of things that came up during argument. There was a discussion on what's happened since. And so I did check. It appears that for 2020 through 2022 returns were filed. There's no refund claim that's been filed. And there's no open examination. There's no deficiency proceedings. I don't know whether they included I mean I didn't pull tax returns to see whether they included cryptocurrency and income or not. But I know that there's no active litigation in this case. And I'm not aware of any other active litigation involving this particular issue. Well let's address that. Why should Mr. Jarrett why should he take the government's word when you say here's a check. We promise we're not going to do anything else with you. To his point that's a promise so to speak. But why should why should we accept that okay that moots everything. Well I mean it's gone through an internal review process and a final decision has been made on behalf of the Attorney General first. Second an overpayment has been scheduled in his official transcript of account. That is the event by law which constitutes the allowance of the claim for refund or credit. So I mean why not change your position. I don't know if it's the guidance or manual forgive me for not remembering the term but why have you not changed your public position. Well I do want to be clear I don't think the IRS's public position is that this particular kind of cryptocurrency is not income. I mean we I don't think the IRS's position wants to take that position at this point in time. So but you know it's an your honor mentioned earlier it's an emerging technology the public published guidance it was out it came out in 2014 if cryptocurrency earned through the proof of stake algorithm was even around then it was just in it's very infancy so you know the IRS says why not it's nine years later why not just clarify that his position is your position. So his position that he is entitled to an overpayment is our position but his position on whether cryptocurrency earned through staking is income is not the IRS's position. It's not the IRS's position but it's but they're right actually on the IRS website I think there are instructions that say to include that cryptocurrency earned through staking may be income so the IRS is not conceding the underlying tax issue. But how can those two things exist at the same time? In other words how can the IRS say on the one hand yes you've overpaid by X amount and presumably the reason for the overpayment is because what he paid on was not income while at the same time saying but our official position is not that that does not equal income. How do those coexist? There's a lot of reasons why you might want to concede a case that aren't because that aren't on the merits. I mean I think How about it's not picking off taxpayers with very good lawyers is it?  well first of all this isn't a class action so it's not a picking off situation. I'm making that point. It's just as devastating to your position if the taxpayer happens to have very good lawyers and I think you would agree this is a well-lawyered case on the other side. I think so but that's what it looks like to me. I mean from a distance that's what it looks like. I'll concede that my opponents in this case are quite good lawyers. I don't you know I can't go into the internal deliberations that went behind the decision to concede the case. I mean those would be subject to privilege but I can tell you give me an abstract possibility that isn't about the reality that these are very good lawyers and they increase the odds you lose. Well so take for example this particular issue. It's an emerging issue. It's new. It's rapidly changing and you know and the IRS should have time to consider its position and in addition I can tell you that the Jarrett's position on the taxability of this particular kind of income isn't necessarily in the best interest of all or even most taxpayers. I mean you know the alternative would be you treat the cryptocurrency as property received when you obtain it and pay tax on it then and then the increase in value when you later sell it would be taxed at capital gains rates whereas you know if you don't treat it as income when it's received then treat it as income when it's sold then then that would be at less favorable rates on ordinary income. So it's not necessarily in the financial interest  or even most taxpayers it's a matter of considering the position. Another reason would be this is a $3500 case. I mean there you know to litigate this case I'm assuming there would be expert witnesses involved that would push the costs up into half a million dollars or more. And it's a complex issue. You know better to have it decided where there's actual financial costs at stake and if it's just a one-off case, if it's not a real issue does the government have to make that expenditure on a one-off case? Like I said it hasn't come up again. Maybe it will. Maybe the IRS will issue guidance in the future. I don't know that. Is it true that there are no other cases out there with this issue? I'm not aware of any. What happens when the shoe's on the other foot so that the taxpayer is the one that wants to end the litigation? Is it symmetric or is it not symmetric? It is symmetric. The provision from the justice manual that was mentioned by counsel doesn't preclude us from conceding a case or preclude taxpayers from moving a case. The particular section refers only to offers in compromise. We treat compromises and concessions as different things. An offer in compromise is asking the government to compromise some aspect of its case. Whereas a concession is we are giving you all the relief to which you have asked. So compromises on the concession side, a taxpayer can say enough is enough, you say my liability is 5,000, you say the staff interest and penalties is another two, so here's the 7, they can control their destiny by looting the case with that payment. With this caveat, as long as there is no other relief the government is seeking, so the government doesn't have the equivalent of the anti-injunction act, its remedies are a bit broader than what would be available to taxpayers, but if it was just a case where the government was seeking to collect taxes that were unpaid and those taxes got paid, then yes, it would still be at liberty to challenge the tax position of the IRS in the next return if they want it, right? Because it's not a settlement agreement, it's just here's the money, I am now looting this case and I have authority if I wish to relitigate the next year for whatever reason, maybe it's a more satisfiable return for that purpose, they could do that. That's absolutely right. If a case is mooted, it doesn't have issue preclusive effect for subsequent cases. Or claim preclusive cases. Dismissal for mootness is without prejudice. Can you address the injunction argument? I believe your opposition mentioned that he found a manual indicating you can get an injunction in tax refund cases. I don't know what that particular manual section says or what it refers to. The  doesn't have the force of law. I can tell you that I would be very, very surprised if that provision said something like you can get prospective injunctive relief, which is what they're asking for. They're asking for in future years, the IRS can't treat this as income. So then if something changes in the way the cryptocurrency algorithm works and the way they earn income, the government instead of bringing its ordinary deficiency procedures would have to come in and seek modification of the injunction. That would be policed by the district court over a series of years. I would be very, very, very surprised if that's what the manual says. And the Fourth Circuit says that 7422A, the refund statute, does not allow for prospective relief. The Tenth Circuit agrees in a case entitled Marvel v. United States, 548F 295. And then the Eleventh Circuit in Christian Coalition of Florida, which is a case I think on all fours with this one, held that look, even if in theory prospective injunctive relief were available in a refund suit, the refund has been paid. So now we just have a standalone claim for a prospective injunction with respect to taxpayers, with respect to the ability of the IRS to tax income. That kind of relief is absolutely at the heart of the Anti-Injunction Act. What about Judge Kavanaugh's perspective on it? I mean, the rate of that perspective seems to have grown in the intervening years. Well, I don't know. Judge Kavanaugh's perspective, again, was in the context of a live refund claim, which I think presumed a live refund claim, not one that had already been paid. And let's remember, by the way, the ticket into district court in a refund suit isn't that the IRS has not paid the refund. Our opponent says that  can kill the case at the outset by paying the refund before the case has commenced. Well, why is that situation any different than the one here? I mean, they get into district court as long as they first file an administrative claim for refund and then wait six months. It's not conditioned on a disallowance of their claim for refund. Under the language of statute, in theory, they could get in if the claim were allowed. But the fact of the matter is, the allowance of the claim, which is what happened here, we allowed the claim for refund and then we made the refund. But the allowance of the claim and the payment of the claim extinguishes the claim. So there's nothing left. I think Judge Kavanaugh presumes a circumstance where there's a live refund claim, which we don't have here. In any event, no court has ever held, I mean this would be the first time in history that a court held that you can get injunctive relief in a refund suit. And it would certainly be the first time in history that you get  relief in  suit. So that's the case. I think the Supreme Court distinguishes those cases very much counts in our favor. If you look at those cases, they distinguish them on the basis that the taxes were paid and thus the claim was paid and then the claim was extinguished by payment of the refund. It's exactly what happened in the tax cases distinguished by the Supreme Court. In reverse, I think the Supreme Court cases involve taxpayer payments, but it's essentially the same case. In reverse, I'm getting now into the weeds and you're free to say I don't feel like going into the weeds or I don't even know what the weeds look like. Justice Thomas in talking about the history of tenders said it seemed to have two components to it. One was the absolute tender, but also the acknowledgement of liability with it. I'm just curious what your take on that is. Well, I will say we acknowledge liability for an overpayment. It may not be for the reasons that the jurors want it to be. We're not saying why they get the overpayment, but we acknowledge liability for the overpayment. They say they want a judgment, but how would we go about satisfying a judgment? Let's say the court entered a judgment in a dollar amount against the United States in this case. What could we do to satisfy that judgment that we haven't already done? We allow the claim, we adjust it. Maybe you're not going to try to tax them in the next 2023. I suppose so, but that's not necessarily a relief to which they're entitled. I do want to say one thing also that has happened since briefing. There was some question about the expiration of the refund check. I do know that in June a refund check was reissued to the Jarrett's. It was done automated, and I don't know whether it was direct deposit or by check, and I don't know whether they cashed the check, but I know the refund was reissued, and I think it was done automatically on the processing of their 2022 return, because again, overpayment is still there. They still have the overpayment, so we're still sending them notices saying if you want payment, just ask for the check. Anyway, that check was reissued, so they do have a check, or it was direct deposit, I don't know which, but they still have payment in their hands, and they're not entitled to a court saying ordering the United States to make a payment when they're holding the payment in their hands. Thank you, Mr. Dale. Chief Judge Sutton, do you have any additional questions? Well, thank you to the court. The decision below is correct. It should be affirmed. Thank you, Your Honors. On that last point, the government is correct that we got an auto-generated check in June. It's dated June 2023, but it raises more questions than it answers. Jarrett has not cashed that check. It remains in the possession of his counsel, just like the original check, and the check is dated in June, which means there was a time from January to June of 2023 when Mr. Jarrett had no money from the government because the first check had expired and there was no new check. And I think this just shows why we are in jeopardy under 7405 for being sued. The new check arguably resets the statute of limitations for the government to come after him if he were to come to cash the refund check. The statute gives you the right to go back to the IRS and get it reissued. In other words, I'm making a point separate from this reissuance in June. Am I wrong about the point that, just talk about me, remarkably, I lose track of what is            I don't know. I don't know. I don't know. I don't know. I don't know. I don't         don't know. I don't know. I don't know. I don't know. I         I don't know. I don't have that precisely. I don't know. I don't have        I don't know. I don't know. I don't know. It doesn't have money.      years   have no idea what to do. Don't have money to say where            idea what to do. No idea what to do. No idea what to do. No idea what